**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

DR. JOSÉ DÍAZ-CASILLAS, *et al.*,

    **Plaintiffs**,

        **v.**

DOCTORS' CENTER HOSPITAL SAN
JUAN, *et al.*,

    **Defendants**.

**Civil No.** 17-1152 (FAB)

**OPINON AND ORDER**

BESOSA, District Judge.

On September 12, 2018, the Court continued the trial pending the disposition of four motions *in limine*. (Docket No. 95.) Plaintiffs José Díaz-Casillas ("José Díaz"), Olga Díaz-Casillas ("Olga Díaz") and Rosa Luz Ramos ("Ramos") (collectively, "plaintiffs") move to exclude the deposition transcripts of Katia Dávila-Díaz ("Dávila") and Kenneth Miller ("Miller"). (Docket Nos. 66 and 67.) The plaintiffs also move to preclude defendants Doctors' Center Hospital San Juan, Inc. ("Doctors' Center Hospital") and José Pesquera-García ("Pesquera") (collectively, "defendants") from calling expert witnesses at trial. (Docket No. 65.) The defendants move to exclude expert testimony by José Díaz and Boris Rojas ("Rojas"), testimony by Dávila and Iris González ("González"), and a "Day in the Life" video of Zoraida Díaz-Casillas ("Zoraida Díaz"). (Docket No. 53.)

For the reasons set forth below, the plaintiffs' motion to preclude the defendants from calling expert witnesses at trial is **MOOT.** (Docket No. 65.) The plaintiffs' motions to preclude Miller and Dávila's deposition transcripts are **DENIED.** (Docket No. 66 and 67.) The defendants' motion *in limine* is **GRANTED IN PART** and **DENIED IN PART.** (Docket No. 53.)

## I.  Background[1]

This medical malpractice litigation stems from a purported misdiagnosis. (Docket No. 1.) On February 12, 2016, Zoraida Díaz became ill with jaundice and developed a skin condition. Id. at p. 4. González drove Zoraida Díaz to the Centro de Diagnóstico y Tratamiento in Carolina, Puerto Rico. Id. at p. 4. A complete blood count exam revealed that Zoraida Díaz possessed a "critical[ly] low value of platelets at 13," in addition to low levels of red bloods cells, hemoglobin, and hematocrits. Id. at p. 5. Zoraida Díaz sent text messages with photos of her skin condition to her brother José Díaz, who is a neurologist in Houston, Texas. Id. José Díaz urged Zoraida Díaz to be "evaluated by a hematologist emergently." Id.

The Centro de Diagnóstico y Tratamiento transferred Zoraida Díaz to the Doctors' Center Hospital. Id. Her transfer sheet

---

[1] The following allegations derive from the complaint. See Docket No. 1.

indicated that she had "petequiae in her mouth and lips and petequiae and hematomas on her extremities." Id. González accompanied Zoraida Díaz in an ambulance to Doctors' Center Hospital. Id. at p. 6.

Doctors' Center Hospital triaged Zoraida Díaz an hour after her arrival, classifying her as "urgent" rather than "emergency." Id. The triage nurse noted that Zoraida Díaz's skin condition was "normal." Id. The emergency room physician, Toru Hashida-Kurihara ("Hashida"), evaluated Zoraida Díaz. Id. She informed Hashida that José Díaz "believed her petechiae, hematomas and laboratory values presented an emergency medical condition." Id. at p. 7. Hashida consulted with Pesquera, a hematologist. Id. Pesquera prescribed one unit of platelets and a corticosteroid. Id. According to the plaintiffs, Pesquera did so without obtaining results from diagnostic tests, including "a peripheral blood smear, an LDH test, and an ADAMTS 13 test." Id. at p. 8. The plaintiffs maintain that these tests are necessary to distinguish between "TTP and ITP," both of which are blood-related diseases. Id. Pesquera diagnosed Zoraida Díaz with ITP. Id.

The plaintiffs allege that blood smears are "ordered on a regular basis when a person is being treated or monitored for a blood cell-related disease." Id. Zoraida Díaz received a blood

smear four days after arriving at Doctors' Center Hospital.  Id.
at p. 9.   The blood smear "yielded a value of 5805 when the
hospital's reported accepted range is between [] 313—618."  Id.
Subsequently,  Zoraida  Díaz's  sight  diminished,  she  became
incoherent and lost control of her extremities.   Id.  Pesquera
ordered a Head CT scan, which "indicated that the images were
deteriorated  by  the  patient's  motion,  aggressiveness  and
disorientation."  Id. at p. 11.

Pesquera subsequently altered his diagnosis.  Id. at p. 11.
He  concluded  that  Zoraida  Díaz  suffered  from  TTP.  Id.   The
plaintiffs aver that the "administration of platelets to a patient
with TTP is contraindicated because it causes thrombi or blood
clots, which can be life threatening."  Id. at p. 8.  The standard
TTP treatment includes a "plasmapheresis or, in the alternative,
a plasma transfusion."  Id. at p. 11.  The Doctors' Center Hospital
did not administer a plasmapheresis or a plasma transfusion.  Id.
If left untreated, TTP "can be fatal or cause lasting damage, such
as brain damage or stroke."   Id.  Zoraida Díaz transferred to
another  hospital  in  Puerto  Rico,  where  she  received  a
plasmapheresis.  Id. at p. 12.

The plaintiffs allege that Zoraida Díaz sustained "permanent
ischemic damage," after which point her family transported her to

Texas for additional medical treatment.  Id.  José Díaz visited
Zoraida Díaz in Texas daily, at times as her attending physician.
Id. at p. 16.  She remains in a "permanent vegetative state,
completely incapacitated and unable to do anything for herself,
even speak."  Id. at pp. 12—13.  At the time of her alleged
misdiagnosis, Zoraida Díaz was 60 years old and "had no physical
limitations."  Id. at p. 14.

On February 7, 2017, José Díaz, Olga Díaz and Ramos commenced
this civil action.  (Docket No. 1.)[2]  The plaintiffs are Zoraida
Díaz's siblings.  Id. at p. 2.[3]  The complaint sets forth a medical
malpractice cause of action pursuant to the Puerto Rico General
Torts Statue, Articles 1802 and 1803 of the Civil Code ("Articles

---

[2] Zoraida Díaz, her daughter Dávila, and other family members commenced a
parallel civil action in the Puerto Rico Court of First Instance, San Juan
Superior Division.  (Docket No. 53 at p. 2; see Dávila-Díaz v. Doctors' Center
Hospital San Juan, Civil No. 2017—1881.)

[3] The plaintiffs invoke this Court's diversity jurisdiction, alleging complete
diversity of citizenship among the parties, and that the amount in controversy
exceeds $75,000.  Docket No. 1 at p. 1; citing 28 U.S.C. § 1332.  José Díaz and
Ramos reside in Texas.  (Docket No. 1 at p. 2.)  Olga Díaz resides in
Pennsylvania.  Id.  Doctors' Center Hospital is a corporation incorporated
pursuant to the laws of Puerto Rico, and maintains its principal place of
business in Puerto Rico.  Id.  Pesquera practices medicine in Puerto Rico.  Id.
The plaintiffs seek $3,000,000 in damages.  Id. at p. 34.  The Court is satisfied
that, based on the allegations set forth in the complaint, diversity
jurisdiction exists in this civil action.

1802 and 1803"). Id. at pp. 16—31; see Laws of P.R. Ann. tit. 31 §§ 5141, 5142.[4]

The complaint names five defendants: Doctors' Center Hospital, Pesquera, Hashida, Guardian Insurance Company, Inc. ("Guardian Insurance"), and Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsibilidad Profesoinal Médico-Hospitalaria ("SIMED"). Id. The Court granted the plaintiffs' motions to dismiss the complaint without prejudice as to Guardian Insurance and SIMED. (Docket Nos. 15 and 30.) Hashida failed to answer the complaint, despite several attempts to serve process on him personally and by publication. See Docket Nos. 18, 20, 26—28. On June 5, 2017, the Clerk entered default against Hashida. (Docket Nos. 33 and 34.) Accordingly, Doctors' Center Hospital and Pesquera are the only remaining defendants in this litigation. The parties filed four motions in limine. (Docket Nos. 53, 65, 66 and 67.) The Court continued trial to adjudicate these motions. (Docket Nos. 82 and 95.)

---

[4] The Court applies Puerto Rico tort law to this diversity suit. See Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) ("Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes.").

## II.  The Plaintiffs' Motions *in Limine*

The plaintiffs filed three motions *in limine*. (Docket Nos. 65, 66 and 67.) José Díaz, Olga Díaz and Ramos seek to preclude the Doctors' Center Hospital and Pesquera from presenting expert testimony at trial, and from using the transcripts from Dávila and Miller's depositions. Id. For the reasons sets forth below, the plaintiffs' motions *in limine* are either **MOOT** or **DENIED**.

### A.  Motion to Preclude Expert Testimony

The plaintiffs move to preclude the defendants from calling expert witnesses at trial. (Docket No. 65.) José Díaz, Olga Díaz and Ramos argue that "[n]either defendant announced any . . . experts and provided no reports in a timely fashion and must, thus, be precluded from using any expert witnesses at trial in this case." Id. at p. 3. In their opposition to the plaintiffs' motion *in limine*, the Doctors' Center Hospital and Pesquera clarify that "there is no designation by either defendant that they would be using an expert in this case." (Docket No. 76 at p. 2.) Accordingly, the plaintiffs' motion to preclude the defendants from calling expert witnesses at trial is **MOOT**.

### B.  Motion to Preclude Kenneth Miller's Deposition Transcript

José Díaz, Olga Díaz and Ramos designated Kenneth Miller as an expert witness. (Docket No. 58 at p. 34.) Miller is a

hematologist and will "testify regarding the breaches in [the] standard of medical care by Co-Defendants, as described in his expert report and explained in his deposition." Id. The defendants deposed Miller on May 16, 2018. (Docket No. 66 at p. 1.)[5] The plaintiffs invoke Federal Rule of Civil Procedure 30 ("Rule 30"), claiming that the Doctors' Center Hospital and Pesquera failed to timely Miller's deposition transcript timely. (Docket No. 66 at p. 2.)  Rule 30 provides that:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed **30 days after being notified by the deponent officer that the transcript or recording is available in which**: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1) (emphasis added).[6]  The Court may impose sanctions for failure to comply with Rule 30.  See Perkasie Indus., Corp. v. Advance Transformer, No. 90-7359, 1992 U.S. Dist. LEXIS 22431 *13 (E.D. Pa. June 11, 1992) ("Although there is no express language in Fed. R. Civ. P. 30(e) authorizing the imposition of

---

[5] The plaintiffs' motion *in limine* states that Miller's deposition occurred on June 16, 2018. (Docket No. 66 at p. 1.)  The defendants, however, maintain that "the deposition of doctor Miller was taken on May 16, 2018." (Docket No. 77 at p. 3.)  Indeed, José Díaz, Olga Díaz and Ramos acknowledge that the defendants' deposed Miller on May 18, 2018 in the joint proposed pretrial order. (Docket No. 58 at p. 35.)  Accordingly, the Court construes the plaintiffs' reference to June 16, 2018 as a typographical error.

[6] In the context of Rule 30(e), the "officer" is the court reporter.  See Holland v. Cedar Creek Mining, Inc., 198 F.R.D. 651, 653 (S.D.W. Va. 2001).

sanctions for violations of the rules (compare Fed. R. Civ. P. 37(b)), I am satisfied that the court has the inherent power to do so.").

José Díaz, Olga Díaz and Ramos misinterpret Rule 30. They refer to date of Miller's deposition, not the date in which the court reporter provided notice "that the transcript or recording [was] available." Fed. R. Civ. P. 30(e)(1); see EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253, 266 (3d Cir. 2010) ("We emphasize that Rule 30(e)'s thirty-day clock beings to run when the party is notified by the court reporter that the transcript is available for review, not when the party or deponent physically receives the transcript from the court reporter.") (citing cases).[7] Without reference to the date that the transcripts were available, preclusion of the transcripts would be improper.

The Court notes that Rule 30 allots litigants "30 days" to review and "attach any changes" to the transcript. Fed. R.

---

[7] See also Steven J. Inc., ex rel., Fenton v. landmark Am. Ins. Co., Case No. 14-474, 2015 U.S. Dist. LEXIS 80278 *18 n.10 (M.D. Pa. June 22, 2015) (denying the plaintiff's request to preclude deposition transcript in part because the parties failed to cite the date in which the defendants "received notification that their transcripts were available for review"); Superior Prod. P'ship v. Gordon Auto Body Parts Co., No. 06-916, 2009 U.S. Dist. LEXIS 25889 *3 (S.D. Ohio Mar. 12, 2009) ("Both parties' memoranda focused on the question of when the transcript was truly 'available' which, in turn, determines when the 30-day period time limit for reviewing and making changes begins to run."); Harvey v. Tenneco, Inc., No. 98-7137, 2000 U.S. Dist. LEXIS 1694 *4 (N.D. Ill. Feb. 11, 2000) ("[T]he 30-day time limit is measured by submission to the court reporter.").

Civ. P. 30(e)(2).  The Doctors' Center Hospital and Pesquera assert
that the plaintiffs received the transcript on August 22, 2018,
more than thirty days ago. (Docket No. 77 at p. 3.)  It bears
emphasis that in seeking to preclude the Doctors' Center Hospital
and Pesquera from using Miller's deposition transcript, the
defendants do not identify any errors in form or substance.
(Docket No. 66.)

Accordingly, the Court **DENIES** plaintiffs' motion to
preclude the Doctors' Center Hospital and Pesquera from using
Miller's deposition transcript.  In the interest of fairness,
however, José Díaz, Olga Díaz and Ramos are **ORDERED** to submit a
proposed errata sheet identifying any proposed change to Miller's
deposition transcript no later than October 30, 2018.

### C.   **Motion to Preclude Katia Dávila-Díaz's Deposition Transcript**

José Díaz, Olga Díaz and Ramos move to preclude the
Doctors' Center Hospital and Pesquera from using Dávila's
deposition transcript pursuant to Rule 30.  (Docket No. 67.)  The
defendants deposed Dávila on November 14, 2017.  Id. at p. 1.  The
parties stipulated that "Ms. Katia Dávila would have thirty (30)
days to examine his [*sic*] deposition, make any corrections to it,
after which term it would be deemed correct and signature waived."
Id.  José Díaz, Olga Díaz and Ramos fail to specify when the court

reporter provided notice that the transcript was available, or whether the plaintiffs received the transcript. The absence of this information prevents the Court from considering the merits of the plaintiffs' Rule 30 motion. Tellingly, José Díaz, Olga Díaz and Ramos fail to specify any errors in Davila's deposition transcript. Accordingly, the Court **DENIES** the plaintiffs' motion to preclude the defendants from using Dávila's deposition transcript. Again, the Court **ORDERS** the plaintiffs to submit a proposed errata sheet identifying any error contained in Dávila's transcript no later than October 26, 2018.

### III. The Defendants' Motion *in Limine*

The Doctors' Center Hospital and Pesquera move to exclude the following evidence from trial: (1) expert testimony by José Díaz, (2) expert testimony by Rojas, (3) testimony by Dávila, (3) testimony by González, and (4) a "Day in the Life" video. (Docket No. 53.)[8] The defendants' motion *in limine* is **GRANTED IN PART** with respect to expert testimony by José Díaz, and **DENIED IN PART** with respect to expert testimony by Rojas, testimony from Dávila, testimony from González, and the "Day in the Life" video.

---

[8] The Court granted Pesquera's requests to join the Doctors' Center Hospitals' motion *in limine* and responses in opposition to the plaintiffs' motions *in limine*. (Docket Nos. 54, 91, 92 and 93.)

**A.    Testimony by José Díaz**

The Doctors' Center Hospital and Pesquera move to preclude José Díaz from testifying as an expert witness pursuant to Federal Rule of Civil Procedure 26 ("Rule 26"). (Docket No. 53 at pp. 2—4.) Because the plaintiffs failed to designate José Díaz as an expert witness in violation of Rule 26, the defendants argue that preclusion is proper pursuant to Federal Rule of Civil Procedure 37 ("Rule 37"). <u>Id.</u>  The Court agrees.

José Díaz's designation as a fact witness, an expert witness, or a hybrid of the two will determine whether the plaintiffs complied with Rule 26.  <u>See</u> Fed. R. Evid. 701, advisory committee note (a witness may "provide both lay and expert testimony in a single case"); <u>Ting Ji v. Bose Corp.</u>, 538 F. Supp. 2d 354, 359 (D. Mass. 2008) (holding that "the roles of fact

witness and expert witness are not necessarily mutually exclusive").[9]

## 1.  Federal Rule of Civil Procedure 26

Rule 26 governs the disclosure of witnesses.  Fed. R. Civ. P. 26.  The purpose of Rule 26 is to prevent "trial by ambush," because opposing counsel cannot adequately cross-examine without advance preparation.  <u>Macaulay v. Anas</u>, 321 F.3d 45, 50, 52 (1st Cir. 2003) (affirming the preclusion of evidence because "[t]he record shows beyond the hope of contradiction that she had ample time to conduct discovery and to submit her expert reports within the period allotted by the district court").  Parties must disclose any potential fact witness "likely to have discoverable information," within 14 days after the Rule 26(f) conference.  Fed. R. Civ. P. 26(a)(1)(C).

---

[9] Testimony by a lay witness is "rationally based on the perception of the witness."  <u>United States v. Flores de Jesús</u>, 569 F.3d 8, 20 (1st Cir. 2009) (citing Fed. R. Evid. 701).  "Rule 26 uses the term expert 'to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.'"  <u>Gómez v. Rivera Rodríguez</u>, 344 F.3d 103, 113 (1st Cir. 2003).  Pursuant to Rule 702, a witness may provide expert testimony if doing so "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; <u>see Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 592 (1993); <u>see also Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147-49 (1999) (holding that <u>Daubert</u> applies to technical and other specialized expert testimony as well as to scientific testimony); <u>Salas v. Carpenter</u>, 980 F.2d 299, 305 (5th Cir. 1992) ("Expert witnesses may perform two roles: explaining evidence to a jury, and acting as the source of evidence for a jury.").  The Federal Rules of Evidence prohibit lay witnesses from offering testimony regarding "topics that are beyond the understanding of an average juror."  <u>United States v. Williams</u>, 827 F.3d 1134, 1156 (D.C. Cir. 2016).

Expert witnesses are subject to additional disclosure requirements. Fed. R. Civ. P. 26(a)(2). Unless otherwise ordered by the Court, parties must identify expert witnesses "at least 90 days before the date set for trial or for the case to be ready for trial." Id.; compare Downey v. Bob's Disc. Furniture Holdings, 633 F.3d 1, 5 (1st Cir. 2011) ("At its most basic level, [Rule 26] obligates a party who wishes to offer expert testimony to disclose 'the identify of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.") (citation omitted), with Goldman v. Philips & Son Drilling, Inc., No. 13-125, 2014 U.S. Dist. LEXIS 77970 *7 (D.W. Va. June 9, 2014) ("Unlike expert witnesses or hybrid witnesses, however, when a person is merely a fact, or lay witness, Rule 26 of the Federal Rules of Civil Procedure only requires the party to disclose the name, address and telephone number of each witness.").

Rule 26 also requires each party to supplement or correct its disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(3)(1)(A). In the event of an untimely disclosure, the movant "is not allowed to use that information or witness to supply evidence on a motion, at a

hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

### 2.    Lay and Expert Testimony

To distinguish lay from expert testimony, courts analyze "the essence of the proffered testimony." Gómez, 344 F.3d at 113. "The line between expert testimony under [Federal Rule of Evidence 702] and lay opinion under [Federal Rule of Evidence 701] is not easy to draw." United States v. Ayala-Pizarro, 407 F.3d 25, 28 (1st Cir. 2005) (citation omitted) (holding that a police officer qualified as a lay witness and expert witness, because he possessed 'particularized knowledge . . . by virtue of his position"); Castro-Medina v. P&G Commer. Co., 565 F. Supp. 2d 343, 361 (D.P.R. 2008) (Pérez-Giménez, J.) (holding that the distinction between a lay and an expert witness "lies in the nature of the witness's involvement in the case and the nature of the testimony the parties intend for the witness to proffer"). Accordingly, the content of José Díaz's proposed testimony – not his status as a plaintiff or as a neurologist - is dispositive.

### 3.    Discussion

The Court initially set trial for September 10, 2018. (Docket No. 22.) On June 9, 2017, the parties filed a joint case management memorandum. (Docket No. 35.) In the memorandum,

the plaintiffs identified José Díaz as a "factual witness," not an

expert witness.  Id. at pp. 25—26.[10]  The plaintiffs expressed

their intention to elicit testimony from José Díaz regarding:

> His **personal knowledge** of the development of his
> sister's condition and the events that transpired while
> she was receiving treatment in Texas.  Will also testify
> about his sister's current physical state, **his own
> emotional pain and suffering**, and the emotional pain and
> suffering he witnessed in his niece and nephew, now main
> caretakers of his disabled sister.

Id. at p. 25 (emphasis added).  The Court ordered the parties to

disclose and exchange the names and CV's of experts by July 7,

2017.  (Docket No. 36.)  The defendants deposed José Díaz on

January 26, 2018.  (Docket No. 68, Ex. 1)

Seven months later and seventeen days before trial

was set to commence, the parties submitted a joint proposed

pretrial order on August 20, 2018.  (Docket No. 58.)  In this

order, the plaintiffs listed José Díaz as a fact witness **and** an

expert witness.  Id. at pp. 32 and 35.  The plaintiffs disclosed

José Díaz as an expert witness regarding:

> Zoraida Díaz Casillas' past as well as her current
> physical and neurological state.  Will also testify as
> to the endeavors he took and the medical care he provided

---

[10] José Díaz, Olga Díaz and Ramos initially designated three experts: (1) a
"Hematologist expert on negligence," (2) a life care plan expert, and (3) an
economic expert.  (Docket No. 35 at p. 26.)  Prior to the joint case management
memorandum, the plaintiffs identified José Díaz as witness with "knowledge of
his emotional damages and of Zoraida Díaz Casillas's physical condition."
(Docket No. 53, Ex. 1 at p. 1.).

Zoraida while she was in Texas and in P.R. after the
incident subject of this case.

Id. at p. 35.[11]

### a.    José Díaz is a Percipient Fact Witness

No party disputes that José Díaz is a lay
witness.  He may testify regarding his personal knowledge of the
events that transpired before and after Zoraida Díaz's alleged
misdiagnosis in accordance with the Federal Rules of Evidence.
The plaintiffs assert, however, that evidence concerning "the
medical care [José Díaz] provided Zoraida while she was in Texas
and in P.R." constitutes expert testimony.  (Docket No. 58 at
p. 35.)  The Court disagrees.

José Díaz's experience as his sister's
treating physician qualifies him to testify as a percipient fact
witness, not as an expert witness.  "[A] percipient witness who
happens to be an expert" is not necessarily an expert witness

---

[11] The plaintiffs also modified the description of José Díaz as a fact witness.
(Docket No. 58 at p. 32.)  The joint proposed pretrial order provides that José
Díaz:

> Will testify as to his close relationship with his sister, Zoraida
> Díaz Casillas and his emotional damages he has suffered as a result
> of the medical malpractice.  He will testify as to Zoraida Díaz
> Casillas's medical condition as well as his participation in trying
> to ensure she obtain proper care at Doctor's Hospital and subsequent
> treatment in PR and Texas.  His knowledge as a neurologist gives
> him particular insight as to his sister's pain and suffering which,
> in turn, affects his own.

Id. at p. 32.

within the meaning of Rule 26.  <u>Gómez</u>, 344 F.3d at 113 (citing Fed. R. Evid. 702) (holding that although "Pinot obviously had specialized knowledge by virtue of his position," the defendants "need not identify [him] as an expert so long as [he] played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit [his] knowledge of those events"); <u>see</u> <u>Downey</u>, 633 F.3d at 6 ("[W]here, as here, the expert is part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert.").  Testimony that is "based on personal knowledge acquired before any litigation had begun" is not expert testimony.  <u>Id.</u>  (noting that "courts have followed the advisory committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of the patient, is not an expert witness for purposes of Rule 26").

The circumstances in <u>González v. Executive Airlines</u> are analogous to this case. 236 F.R.D. 73 (D.P.R. 2006) (Pieras, J.).  In <u>González</u>, the plaintiff disclosed that she intended to call her treating psychiatrist as a lay witness.  <u>Id.</u> The defendants objected, however, arguing that the psychiatrist qualified as an expert witness.  <u>Id.</u>  The court rejected this

proposition, holding that "a treating physician is an actor in the actual narrative of the case."  Id. at 76; see e.g., Torres-Rivera v. Centro Médico Del Turano Inc., 215 F. Supp. 3d 202,, 205 (D.P.R. 2016) (Gelpí, J.) ("Dr. Ramdev will provide testimony arising from his role as an actor in the events giving rise to litigation, and is therefore appropriately viewed as a fact witness not subject to Rule 26's requirements for expert witnesses.") (citation and internal quotation marks omitted); Hadley v. Pfizer, Inc., No. 08-1440, 2009 U.S. Dist. LEXIS 47363 *11—12 (E.D. Pa. June 4, 2009) ("The Court agrees that a treating physician may testify as a fact witness, pursuant to Rule 701, so long as the treating physician's testimony is 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.") (citation omitted).  Because the testimony provided by the plaintiff's psychiatrist concerned only "the facts known to him during the course of the care and treatment of the patient," the disclosure requirements pursuant to Rule 26 did not apply.  Id. at 78.

Like the physiatrist in González, José Díaz served as Zoraida Díaz's treating physician, attending to his sister's care in Houston. (Docket No. 68 at p. 11 and 20.)  The plaintiffs misconstrue evidence concerning "the endeavors that [José Díaz] undertook and the medical care he provided Zoraida

while she was in Texas and in P.R." as expert testimony. (Docket No. 68 at p. 11.) This testimony is factual in nature. José Díaz served as his sister's treating physician before this litigation commenced. He is "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven." Gómez, 44 F.3d at 113. Indeed, the plaintiffs concur that José Díaz acted as a "treating physician." Id. Accordingly, José Díaz may testify regarding the treatment he provided Zoraida Díaz as a percipient fact witness.

### b. José Díaz as an Expert Witness

The plaintiffs seek to elicit expert testimony from José Díaz regarding "Zoraida Díaz Casillas' past as well as her current physical and neurological state." (Docket No. 58 at p. 35.) According to the plaintiffs:

> [A]s an expert in Neurology [. . .] his testimony would further help to understand the permanent state of her damages as a result of defendants' malpractice and further help them understand why him, as a physician with specialized knowledge of her current condition, has suffered immensely in knowing the state of alertness, pain, helplessness and suffering her [*sic*] sister is experiencing as a result of having been left in a 'locked-in' state following defendants' negligent acts.

(Docket No. 68 at p. 13.)

Testimony concerning Zoraida Díaz's physical and neurological state may require "scientific, technical, or

other specialized knowledge" pursuant to Federal Rule of Evidence
702.  (Docket No. 58 at p. 35.)  By designating José Díaz as an
expert witness, plaintiffs trigger the disclosure requirements set
forth in Rule 26(a)(2).  The Court ordered the parties to "disclose
and exchange the names and CVs of experts by [July 7, 2017]."
(Docket No. 36.)  The plaintiffs concede that they violated this
deadline, affirming that it was not until August 2, 2018 that the
"Plaintiffs listed [José Díaz] as both a fact witness and an expert
witness who was also one of Zoraida Díaz Casillas' treating
physicians." (Docket No. 68 at p. 10) (emphasis added).

        The exclusion of José Díaz as an expert
witness is an appropriate and warranted sanction.  Rule 37 requires
exclusion unless the party facing sanctions establishes that the
failure to comply was justified or harmless.  Wilson v. Bradlees
of New England, Inc., 250 F.3d 10, 20-21 (1st Cir. 2001).
Exclusion is a compelling impetus to follow the Federal Rules of
Civil Procedure and the schedule set by the Court.  See Thibeault
v. Square D Co., 960 F.2d 239, 245 (1st Cir. 1992).  Introducing
"new expert testimony on the eve of trial" can prejudice the
opposing party, and will not be admitted without good cause.  Id.
at 247.  "Rules 26(a) and 37(c)(1) seek to prevent the unfair
tactical advantage that can be gained by failing to unveil an

expert in a timely fashion." Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004) (citing Thibeault, 960 F.2d at 244).

The Court may forgo sanctions for untimely disclosures upon a finding of substantial justification or harmlessness. See, e.g., id. The Court must balance fairness to the parties with the need to manage dockets, considering the totality of the circumstances, such as: the history of the litigation, the need for the challenged evidence, any justifications, prior notice of the expert and the possibility of designation, whether the testimony will be meaningfully different from or cover the same areas as that of other experts, and the ability of the opposing counsel to depose or cross-examine the proposed expert. Macaulay, 321 F. 3d at 51; see Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 10-11 (1st Cir. 2001). A late disclosure is harmless if it "occurs long before trial and is likely subject to correction" without materially prejudicing the opposing party. Samos Imex Corp. v. Nextel Communs., Inc., 194 F.3d 301, 305 (1st Cir. 1999); see Ferrara & DiMercurio, 240 F.3d at 10.

This litigation commenced nearly two years ago on February 2, 2017. (Docket No. 2.) The plaintiffs knew of José Díaz's existence and the expert testimony he could potentially

offer because José Díaz is a plaintiff.   José Díaz sat for his
deposition on January 26, 2018, a year after the plaintiffs filed
the complaint.   (Docket No. 68, Ex. 1).   At the time of his
deposition, the plaintiffs identified José Díaz only as a fact
witness, and it is with this understanding that the defendants
deposed him.   See Docket No. 35 at p. 25.

          In support of their contention that the Court
should allow José Diaz to testify as an expert, the plaintiffs
argue that the Doctors' Center Hospital and Pesquera "had ample
opportunity to explore all aspects of Zoraida Díaz Casillas'
physical condition and his opinion as an expert in the Neurology
field." (Docket No. 68 at p. 3.)   The plaintiffs are mistaken.
The Doctors' Center Hospital and Pesquera had no reason to explore
José Diaz's opinions as a neurologist when they deposed him because
the plaintiffs had not designated him as a neurological expert
prior to that date.   The First Circuit Court of Appeals has
recognized that Rule 26 "require[s] formal disclosure for a reason;
without it, parties like the defendants in this case may be
hindered in their ability to prepare effectively for trial."
Esposito v. Home Depot, U.S.A., 590 F.3d 72, 78 (1st Cir. 2009);
see Musser v. Gentiva Health Servs., 356 F.3d 751, 756—759 (7th
Cir. 2004) (affirming the district court's decision "that the

[fact] witnesses identified by the [plaintiffs] should not be permitted to testify as expert witnesses" because "disclosing a person as a [fact] witness and disclosing a person as an expert witness are two distinct acts," and the defendant "was denied the opportunity to question the witnesses in their expert capacity").

        The plaintiffs named José Díaz as an expert witness one month before the trial was set to commence, further underscoring the prejudice resulting from the plaintiffs' untimely disclosure.  Ironically, José Díaz, Olga Díaz and Ramos seek to preclude Doctors' Center Hospital and Pesquera from calling expert witnesses, because the defendants "did not disclose and exchange names and CV's of experts" by the July 7, 2017 deadline.  (Docket No. 58 at p. 35.)    With great temerity, the plaintiffs assert that the "[the Doctors' Center Hospital and Pesquera] cannot willfully disregard the Court approved deadlines and be allowed to bring in expert witnesses many months after the passage of these deadlines."  Id. at p. 36.  Neither can José Díaz, Olga Díaz and Ramos.  "A litigant who ignores a case-management deadline does so at his peril."  Rosario-Díaz v. González, 140 F.3d 312, 315 (1st Cir. 1998) (affirming sua sponte dismissal of summary judgment motion "[g]iven the baldness of the appellants' transgressions, the potential prejudice to the plaintiffs and to the orderly

administration of the court's docket caused by the late filings, and the need to deter such conduct").

### c. Expert Testimony Regarding José Díaz's Emotional Damages

José Díaz may testify as to his emotional damages without qualifying as an expert witness. <u>See</u> <u>Ricks v. Abbot Labs.</u>, 198 F.R.D. 647, 649 (D. Md. 2001) ("A trier of fact, however, does not need help understanding the ordinary grief, anxiety, anger and frustration that any person feels when something bad occurs."). Expert testimony offered to establish a plaintiff's emotional distress is admissible, but not required. <u>Koster v. TWA</u>, 181 F.3d 24, 35 (1st Cir. 1999) ("Although testimony from a mental health expert is not required to sustain an award for emotional distress, the absence of such evidence is useful in comparing the injury to the award of damages."); <u>see e.g.</u>, <u>Méndez-Matos v. Municipality of Guaynabo</u>, 557 F.3d 36, 47 (1st Cir. 2009) ("A plaintiff does not need to present expert testimony to recover damages for emotional distress caused by the violation of his civil rights.") (citation omitted). José Díaz need not qualify as an expert in neurology to convey the extent of his emotional pain.

The Court will allow José Díaz to testify as a lay witness, but not as an expert.[12]  As discussed below, the plaintiffs may nonetheless elicit the testimony of Boris Rojas, the neurologist whom they properly designated as an expert.  The defendants' motion to preclude José Díaz from testifying as an expert witness is **GRANTED**.

### B.  Testimony by Boris Rojas

The Doctors' Center Hospital and Pesquera move to preclude Rojas from testifying as an expert witness.  (Docket No. 53 at p. 4—7.)  According to the plaintiffs, Rojas "will testify that the TTP . . . caused the permanent Center Nervous System damage, leaving [Zoraida Díaz] totally and permanently incapacitated, but aware in a locked in condition." (Docket No. 58 at p. 35.)  The defendants emphasize that Zoraida Díaz is not a party to this litigation.  Because José Díaz, Olga Díaz and Ramos seek damages for their own pain and suffering, the Doctors' Center Hospital and Pesquera contend that "discussion of [Zoraida Díaz's]

---

[12] Rule 26 requires that expert witnesses "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" submit a written report.  Fed. R. Civ. P. 26(a)(2)(B).  This report must specify *inter alia* the expert witness' qualifications and a "complete statement of all opinions the witness will express and the basis and reasons for them." Id.  The Doctors' Center Hospital and Pesquera argue that José Díaz, Olga Díaz and Ramos failed to submit an expert report. (Docket No. 53.)  Because preclusion of José Díaz as an expert witness is premised on the plaintiffs' untimely disclosure, the Court need not address whether the report requirement is applicable in this case.

state of health in this case significantly impacts the likelihood that the jury could be confused, misled, and entertains damages claims that are not probative for the claims presented of pain and suffering before this Court." (Docket No. 53 at pp. 5—6.)   The Doctors' Center Hospital and Pesquera cite Federal Rule of Evidence 403 ("Rule 403"), contending that Rojas' proposed testimony will "be unfairly prejudicial." Id. at p. 7.   The Court disagrees.

### 1.   Federal Rule of Evidence 403

"Relevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402.   "Irrelevant evidence is not admissible."   Id.   "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.   The Federal Rules of Evidence "set a very low bar for relevance." United States v. Rodríguez-Soler, 773 F.3d 289, 293 (1st Cir. 2014) (internal citation omitted).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.   "In balancing the scales

of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design, all evidence is meant to be prejudicial." United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (internal quotation marks and citation omitted). "Evidence is generally deemed unfairly prejudicial if it has an undue tendency to prompt a decision by the factfinder on an improper basis." United States v. Benedetti, 433 F.3d 111, 118 (1st Cir. 2005).

> **2.    The Testimony that the Plaintiffs Intend to Elicit from Boris Rojas is Relevant and Not Unduly Prejudicial**

The testimony that José Díaz, Olga Díaz and Ramos intend to elicit from Rojas is relevant to the medical malpractice claims set forth in the complaint. (Docket No. 1.) Pursuant to Puerto Rico law, "individuals who are harmed because a close relative or loved one is tortiously injured may invoke Article 1802 as a vehicle for prosecuting a cause of action against the tortfeasor." Díaz-Nieves v. United States, 858 F.3d 678, 689 (1st Cir. 2017) (citation omitted). To prevail on a derivative medical malpractice claim, the plaintiffs must demonstrate that: (1) they suffered emotional harm, (2) their emotional harm resulted from the defendants' tortious conduct toward Zoraida Díaz, and (3) the

defendants' "conduct was tortious or wrongful." Díaz-Nieves, 858 F.3d at 689.

José Díaz, Olga Díaz and Ramos may seek "compensation for the sufferings, emotional distress, or mental anguish they experienced as a consequence of the material or other damages caused directly to [Zoraida Díaz]." Santana-Concepción v. Centro Médico del Turabo, Inc., 768 F.3d 5, 10 (1st Cir. 2014) (quoting Santini-Rivera v. Serv. Air., Inc., 137 D.P.R. 1 (1994). Because "a cause of action under Article 1802 'is wholly derivative . . . its viability is contingent upon the viability of the underlying [claim].'" Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2009) (citation omitted); see Díaz-Nieves, 858 F.3d at 689 ("Because, as previously discussed, the district court correctly dismissed Joel's claims, the derivative claims of his relatives were also properly dismissed."). Accordingly, the plaintiffs' medical malpractice claim is contingent on a finding of negligence on the part of the defendants toward Zoraida Díaz. See Méndez-Matos, 557 F.3d at 57 (holding that an Article 1802 claim asserted by the son and wife of a falsely imprisoned individual "is derivative and depends on the viability of the underlying claim of the relative or loved one").

Medical malpractice liability in Puerto Rico is fault based.  Rodríguez-Díaz v. Seguros Triple-S, 636 F.3d 20, 23 (1st Cir. 2011).  Pursuant to Article 1802, "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done."  P.R. Laws Ann. tit. 31, § 5141.  "Within this rubric, three elements coalesce to make up a *prima facie* case for medical malpractice (a species of professional negligence)."  Martínez-Serrano v. Quality Health Servs. of P.R., Inc., 568 F.3d 278, 285 (1st Cir. 2009).  To prove medical malpractice in Puerto Rico, a plaintiff must establish: "'(1) the duty owed (*i.e.*, the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm.'"  Torres-Lazarini v. United States, 523 F.3d 69, 72 (1st Cir. 2008) (citing Cortés-Irizarry, 111 F.3d at 189).

The Doctors' Center Hospital and Pesquera attempt to isolate Zoraida Díaz from this litigation, placing the plaintiffs' medical malpractice claim in a vacuum.  The Court is cognizant that Zoraida Díaz is not a party.  The purported misdiagnosis of Zoraida Díaz, however, is relevant and integral to the plaintiffs' claims.  Testimony "that the TTP . . . caused the

permanent Center Nervous System damage" is critical, particularly with regard to the causation element of plaintiffs' negligence claim. (Docket No. 58 at p. 35.) This evidence is also material to the emotional damages allegedly sustained by José Díaz, Olga Díaz and Ramos. The Doctors' Center Hospital and Pesquera provide no reason for the Court to conclude that the probative value of Rojas' proposed testimony is substantially outweighed by the danger of unfair prejudice. Accordingly, the Court **DENIES** the defendants' motion to preclude expert testimony by Rojas.

   **B.    Testimony by Katia Dávila-Díaz**

        The defendants move to preclude the testimony by Dávila for two reasons. (Docket No. 53 at p. 7.) First, the Doctors' Center Hospital and Pesquera contend that Dávila's proposed testimony exceeds the scope of the plaintiffs' Rule 26 disclosure. Id. at p. 8. Second, the defendants maintain that Dávila's proposed testimony "is an attempt by plaintiff to bring forth to the jury the damages of Zoraida that certainly, if heard by the jury, will certainly confuse the jury at the time of assessing the award for damages of the federal plaintiffs." Id. at p. 9.

        The parties need not detail with specificity the testimony of potential fact witnesses pursuant to Rule 26. The initial disclosure requirements mandate that parties name "each

individual likely to have discoverable information — along with the subject of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  José Díaz, Olga Díaz and Ramos stated that Dávila "has knowledge of Zoraida Díaz Casillas's treatment, condition and current physical state."  (Docket No. 53, Ex. 1 at p. 2.)  This disclosure is sufficient pursuant to Rule 26.

The plaintiffs also seek to elicit testimony from Dávila concerning the "plaintiffs' relationships past and present with her mother as well as how her mother's present condition has affected them."  (Docket No. 58 at p. 32.)[13] Whether this testimony is relevant, not unduly cumulative, and is supported by a proper foundation will be determined in the context of trial.

---

[13] José Díaz, Olga Díaz and Ramos initially provided a more extensive description of Dávila's proposed testimony, including:

> her personal knowledge of the development of her mother's condition, her own, her brother's, and her mother's suffering while Zoraida was hospitalized and receiving negligent care, and the events that transpired while her mother was receiving treatment in Texas.  Will also testify about her mother's current physical state and her current medical requirements, the care she provides to her disabled mother daily, her own emotional pain and suffering, the economic losses that this has entailed for her family unit, including but not limited to the loss of her earnings outside of the home.

(Docket No. 35 at p. 25.)  Because Dávila is not a party to this case, evidence concerning Dávila's emotional and economic damages is irrelevant.  The emotional pain endured by Dávila's brother is also irrelevant.

The Court rejects the defendants' contention that the jury will award the "damages of Zoraida" to José Díaz, Olga Díaz and Ramos.  (Docket No. 53 at p. 9.)  The Court will instruct the jury that the plaintiffs are eligible only for damages arising from their own emotional distress, not for the damages sustained by Zoraida Díaz or Dávila.[14]  Accordingly, the plaintiffs' motion to restrict Dávila's testimony is **DENIED**.

C.    **Testimony by Iris González**

The Doctors' Center Hospital and Pesquera move to preclude testimony from González, the woman who accompanied Zoraida Díaz to the Doctors' Center Hospital.  (Docket No. 53 at pp. 7—9.)  The plaintiffs "have decided to waive the use of this witness for trial."  (Docket No. 68 at p. 18.)  Accordingly, the defendants' motion to preclude testimony by González is **MOOT.**

---

[14] Courts routinely instruct the jury to disregard the negligent acts or damages committed and sustained by third parties.  See Ponce v. Ashford Presbyterian Cmty. Hosp., 238 F.3d 20—24 (1st Cir. 2001) (affirming the following jury instruction: "Ashford may not be found liable for any damages which may have been caused by the negligent acts or omissions of the treating physicians. Plaintiffs may only recover damages against Ashford if they establish that the injury suffered by baby Natalie Alicea Sánchez was proximately caused by Ashford's negligent acts or omissions"); DoCARMO v. F.V. PILGRIM I CORP., 612 F.2d 11, 13 (1st Cir. 1979) (finding "no error in the district court's ruling and jury instructions so limiting damages," because "the deceased seaman's survivors are limited to recovering damages of a pecuniary nature"); Britton v. Maloney, 981 F. Supp. 25, 55 n. 65 (D. Mass. 1997) (noting that the "instructions specifically told the jury the limits on the plaintiff's damage claims, instructing to the jury that if they arrived at damages, they could consider" only emotion distress).

**D.    The "Day in the Life" Video**

The plaintiffs seek to introduce a "Day in the Life" video into evidence.  The video is approximately five minutes long. (Docket No. 71.)  In the video, Zoraida Díaz is bed-ridden and her body is stiff.  Id.  Dávila bends her mother's fingers, arms, and legs; changes her catheter; dries her hair; and performs what appears to be visual therapy.  Id.  The defendants contend that the video is unduly prejudicial "because it introduces a factor into the case that might encourage the jury to dislike or disapprove of the defendant independent of the merits."  (Docket No. 53 at p. 14.)  According to the defendants, the "Day in the Life" video will confuse the jury pursuant to Rule 403.  Id.  The defendants' arguments are unavailing.

The Court possesses "broad discretion in ruling on the admissibility of tape recordings, even where portions of the tapes are unintelligible."  United States v. Font-Ramírez, 944 F.2d 47 (1st Cir. 1991) (affirming admission of video footage that "place[d] Bouret and the defendants together in the apartment, corroborating Bouret's direct testimony").  Video evidence "must be judged under its own particular facts taking into account the specific purposes for which this type of evidence is submitted." Szeliga v. Gen. Motors Corp., 728 F.2d 566, 567 (1st Cir. 1984);

Farley v. United States, 98 F. Supp. 3d 299 (D.N.H. 2015) (permitting the plaintiffs to admit a "day-in-the-life" video of a stroke victim suffering from a "locked-in syndrome"); García-Colón v. García-Rinaldi, No. 01-1571, 2006 U.S. Dist. LEXIS 86418 *39, 40 (D.P.R. Nov. 28, 2006) (Domínguez, J.) (granting motion to introduce "the film A Day in the Life [of plaintiff] provided proper safeguards are taken [and] the court is also to provide an instruction as to the lighting of the film and any other potential inflammatory matter").

The "Day in the Life" video of Zoraida Díaz is relevant to the emotional distress experienced by the plaintiffs. The video also provides corroborating evidence regarding the plaintiffs' claim that Zoraida Díaz remains in a "permanent vegetative state." (Docket No. 1 p. 12.). The Court carefully reviewed the video and conducted a Rule 403 analysis. The probative value of the video is not substantially outweighed by the danger of unfair prejudice. Before publication to the jury, the plaintiffs must properly authenticate the video. Accordingly, the defendants' motion to exclude the "Day in the Life" video is **DENIED**.

## V.  Conclusion

For the reasons set forth above, the plaintiffs' motion to preclude the defendants from calling expert witnesses at trial is

**MOOT.** (Docket No. 65.) The plaintiffs' motions to preclude Miller and Dávila's deposition transcripts are **DENIED.** (Docket No. 66 and 67.) José Díaz, Olga Díaz and Ramos are **ORDERED** to submit an errata sheet identifying any proposed change to Kenneth Miller and Katia Dávila's deposition transcripts no later than **October 30, 2018**. No extensions will be granted. The defendants' motion *in limine* is **GRANTED IN PART** and **DENIED IN PART.** (Docket No. 53.) The pretrial conference and trial are set for **February 15, 2019** and **February 25, 2019**, respectively, beginning at 9:00 a.m. No later than **February 1, 2019**, the parties may file an amended joint proposed pretrial order, amended proposed *voir dire* questions and amended proposed jury instructions in accordance with this Opinion and Order.

        **IT IS SO ORDERED.**

San Juan, Puerto Rico, October 23, 2018.


                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE